# Ravenswood Bank *v.* Reneker, Appellants.

*Practice, C. P.—Pleading—Rule of court.*

Where a rule of court provides that "material averments of fact" contained in a statement, "not directly and specifically traversed and denied by the answer shall be taken as admitted," an uncontradicted material averment is not only evidence, but is conclusive of the facts.

*Promissory notes—Bills of exchange—Fraud.*

The purchaser of a draft is bound to look only to the terms of acceptance ; and when he has acted in good faith, he is not to be prejudiced by the acts of the drawer.

In an action by a bank against the acceptors of a draft, a letter from the acceptors to the bank directing that the bank should cash the drafts of the drawer on the defendants to such an amount as the latter should each week indicate to the bank by telegram or letter, is admissible to show that the bank had nothing to do with the consideration passing from the drawer to the defendants.

*Bill of exchange—Acceptance by telegram—Act of May 10, 1881 , P. L. 17.*

A promise made through the medium of a telegram to pay a draft is the legal equivalent of an acceptance in writing required by the Act of May 10, 1881, P. L. 17.

Argued May 10, 1901. Appeal, No. 59, April T., 1901, by defendants, from judgment of C. P. No. 2, Allegheny Co., April T., 1897, No. 462, on verdict for plaintiff in case of Bank of Ravenswood v. Jacob Reneker, T. J. Reneker, J. O. Reneker and Stephen Linkhorn, trading as Reneker, Linkhorn & Company.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Assumpsit against acceptors of a draft.

At the trial plaintiff's counsel offered in evidence so much of the statement contained in the affidavit of claim and statement as is not denied in the affidavit of defense, to wit: the following particulars: That the plaintiff is a corporation organized and existing under the laws of West Virginia, and engaged in the business of banking. That the defendants are partners doing business in the name and style of Reneker, Linkhorn & Company. Prior to January 5, 1897, one William M. Henderson, a resident of the state of West Virginia, was accustomed to make purchases of cattle, hogs, etc.

The Court: It is printed here State of West Virginia and changed to Ohio.

Mr. Orr: William M. Henderson, a resident of the state of Ohio—that prior to January 5, 1897, one William M. Henderson, a resident of the state of Ohio, was accustomed to make purchases of cattle, hogs, etc., and ship the same to said defendants, who were engaged at the Central Stockyards in the city of Pittsburg, and for the advantage of the said defendants in the prosecution of their business and to enable him, the said Henderson, to make said purchases and shipments, said defendants entered into an agreement with the said plaintiff, whereby the said plaintiff agreed to furnish the money to said Henderson upon draft drawn by the said Henderson upon said defendants, which said draft the said defendants agreed to pay, and did pay from time to time upon the presentation thereof. On January 5, 1897, the said defendants informed said plaintiff that the said Henderson was going to ship them some cattle and would want to draw on them for the amount of from $500 to $700, and said defendants would honor the draft of said Henderson, as usual, and defendants, at the same time, stated that they wanted to withdraw their standing order to pay the drafts of said Henderson, and each week as he, the said Henderson, wanted to draw they would notify the plaintiff or wire the amount they would pay for him. On January 6, 1897, the said Henderson telegraphed the said defendants asking if they would pay his draft for $900, and on the morning of January 7, following, the defendants, by telegram, replied they would pay the draft of $900; thereupon, in pursuance of said notice, and said telegram, which was produced by said Henderson to the

plaintiff, the said plaintiff discounted the draft drawn by said Henderson to the order of the plaintiff on the said defendants for $900, of which a true and correct copy is as follows:

"$900.                                    RAVENSWOOD, Jan. 6, 1897.

"On January 12, 1897, pay to the order of the bank of Ravenswood nine hundred dollars. Value received. And charge to account of W. M. Henderson.

"To Reneker, Linkhorn & Company, Pittsburg, Pa."

And on January 7, aforesaid, relying upon the telegrams and notices aforesaid, the said plaintiff paid to the said Henderson the amount of said draft on the date so named, to wit: January 12, 1897; the plaintiff caused said draft to be presented to the said defendants, but the said defendants refused to pay the same, and plaintiff avers that the defendants have never at any time paid the sum of money or any part thereof, although demands have been made by the plaintiff upon defendants for the same, with interest, no part has ever been paid.

Mr. Carpenter: While those facts are not denied, I desire to enter an objection to the recital of the transaction between the bank and Mr. Henderson and all subsequent to that, excepting the mere averment of fact that the draft was drawn; and I object to it as incompetent, irrelevant and immaterial.

Objection overruled. [1]

Plaintiff's counsel offered in evidence the letters, for the purpose of showing an admission by the defendants that they had agreed to accept that draft as between Henderson and themselves.

Objected to as incompetent and irrelevant. It was after the transaction and was no admission of liability to the bank.

Mr. Orr: I offer letter Exhibit No. 1 to show the course of dealings between the parties.

Objection overruled. [2]

Mr. Carpenter: I propose to read to the jury the telegram received January 6, 1897, signed W. M. Henderson.

Mr. Orr: For what purpose?

Mr. Carpenter: For the purpose of showing the circumstances under which the reply was made.

Objected to as incompetent and irrelevant.

Offer: Counsel for defendants proposes, first, to offer in evi-

dence the telegram identified by the witness and marked Exhibit No. 3, being the telegram mentioned in the pleadings as having been sent by W. M. Henderson to the defendant firm under date of January 6, 1897, and to follow that by proof that the cattle and hogs mentioned therein were not shipped to the defendant company ; and further to prove that the offer to honor the draft was based upon promise to ship the hogs and cattle which were never received.

Objected to as incompetent and irrelevant.

Mr. Carpenter : To be followed by evidence that no promise was ever made to the bank to accept the draft, and that the draft was not accepted in writing, but was refused when presented, unless the court hold as matter of law that the telegram of January 7, and Exhibit No. 4, addressed by Reneker, Linkhorn & Company to W. M. Henderson, was a legal acceptance.

Mr. Orr : I withdraw the objection to that portion of the offer relating to the telegram, but I renew my objection to the remainder of the offer.

Objection sustained. [3]

Telegram : " Will you honor draft 900, ship Friday."

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $598.60. Defendants appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions. (5) In giving binding instructions for plaintiff.

*J. McF. Carpenter*, for appellants.—The telegram was not an acceptance in writing : Brewer v. Horst Lachmund Co., 50 L. R. A. 240 ; National State Bank of Camdem v. Lindeman, 161 Pa. 199; Miners Bank v. Blackiston, 2 Miles, 358; Fairchild v. Feltman, 32 Hun (N. Y.), 398 ; Franklin Bank v. Lynch, 52 Md. 270.

*Charles P. Orr*, with him *Thomas C. Lazear* and *Jesse T. Lazear*, for appellee.—A promise to accept a bill is equivalent to an acceptance, not only as to the drawer, but as to every party who takes the bill on the faith of the promise : Stehman, Baker & Co. v. Harrison & Hooper, 42 Pa. 49.

The telegram was an acceptance : Craig v. Sibbett & Jones, 15 Pa. 238 ; Coffman v. Campbell, 87 Ill. 98 ; Central Savings Bank v. Richards, 109 Mass. 413 ; Brinkman v. Hunter, 73 Mo. 172 ; Molson's Bank v. Howard, 40 N. Y. Superior Ct. 15 ; Barney v. Newcomb, 9 Cush. 49 ; Whilden & Sons v. Merchants' & Planters' Nat. Bank, 64 Ala. 29.

The act of 1881 was passed solely for the benefit of acceptor : Ulrich v. Hower, 156 Pa. 414.

OPINION BY W. D. PORTER, J., July 25, 1901 :

The averments of fact contained in that part of plaintiff's statement, the admission of which in evidence is the subject of the first assignment of error, were material to the issue being tried.   The plaintiff had complied with rule number eight of the court below, in filing this statement, and the defendants had filed their answer as by the rule required.   By the terms of the rule the " material averments of fact," contained in the statement, " not directly and specifically traversed and denied by the answer shall be taken as admitted."   The learned counsel representing the defendants admitted that the answer did not traverse these averments of the statement, and as a consequence, under the rule, the averments were not only evidence but were conclusive of the facts.   The first assignment of error is dismissed.

The purchaser of a draft is bound to look only to the terms of acceptance ; and when he has acted in good faith, he is not to be prejudiced by the acts of the drawer.   It was not proposed to show, in connection with the offer of evidence, the rejection of which is the subject of the third specification of error, that the bank was a party to or had notice of the fraud practiced by the drawer subsequently to the acceptance of the bill ; and there was no error in the rejection of the evidence : Craig v. Sibbett & Jones, 15 Pa. 238.   The fourth specification of error is, for the same reason, dismissed.

The letter, the admission of which in evidence is the subject of the second assignment of error, has been lost, and is not printed in appellant's paper-book.   The notes of testimony as printed in appellant's paper-book show that the plaintiff offered but one letter which was received in evidence.   This is no doubt the letter referred to by the learned judge in his opinion

refusing a new trial. It was admitted that the defendants wrote and sent this letter to the bank on January 5, 1897, and the opinion quotes it as follows : " We want to withdraw our standing order to pay his drafts, and each week as he wants to draw we will notify you by letter or wire the amount we will pay for him." This letter referred to the drawer of the bill in question and proved that up to that time the bank had a standing order to pay all his drafts on the defendants. This letter withdrew that unlimited authority and after its receipt the bank was only authorized to advance for the defendants to Henderson, the drawer, such amounts as they should from week to week specify by letter or telegram. The letter further stated that Henderson was the next week to ship some cattle to the defendants and he would want to draw on them for from $500 to $700 and they were to honor his draft as usual. This letter was an order on the plaintiff to cash the drafts of Henderson on the defendants, to such an amount as they should each week indicate by telegram or letter. It clearly proved that the bank had nothing to do with the consideration passing from Henderson to the defendants. To have rejected such evidence would have been manifest error.

This leaves for consideration the allegation of error upon which the appellant chiefly relies. The learned court below held that a promise made through the medium of a telegram, to pay a draft, is the legal equivalent of an acceptance in writing required by our statute, and upon the correctness of this ruling the whole case depends. There can be no question that, prior to the Act of May 10, 1881, P. L. 17, a promise to accept a bill or draft was tantamount to an acceptance. The promise to accept a bill for a fixed amount is equivalent to an acceptance not only as to the drawer, but as to every party who takes the bill upon the faith of that promise. " The prevailing inducement for considering a promise to accept, as an acceptance, is that credit is thereby given to the bill. And this credit is given as effectually by a letter written before the date of the bill, as one written afterwards : " Steman, Baker & Company v. Harrison & Hooper, 42 Pa. 49. The contention of the appellant is that since the passage of the act of 1881 a promise to accept can no longer be binding as an acceptance. We cannot so construe the statute. Prior to its enactment it had been

possible to charge a drawee upon evidence of an oral promise to accept a draft. The legislature in its wisdom determined that the law in that respect should be changed, and enacted : " That no person within this state shall be charged, as an acceptor on a bill of exchange, draft or other contract for the payment of money exceeding $20.00, unless his acceptance shall be in writing signed by himself, or his legal agent." The act does not provide that the acceptance must be upon the draft ; it is therefore competent to show an acceptance which does not appear upon the instrument. The same legislative motive which led to the enactment of the statute of frauds and perjuries bears fruits in this legislation ; the purpose was to free certain classes of contracts from the uncertainty involved in establishing them by oral evidence. The legislature made no attempt to prescribe what covenants should constitute an acceptance ; it did determine that the only legal evidence of such contract shall be in writing signed by the party or his agent. A contract which would have constituted a valid acceptance before the enactment of the statute, will if in writing and signed by the party or his agent still do so.

On January 7, 1897, the plaintiff had in its possession the letter from the defendants above recited. On that day the defendants telegraphed to Henderson that they would pay his draft for $900. The defendants in their affidavit of defense say ; " It is also true that said Henderson requested the defendants to pay a draft of $900, being the same now sued on, and that they promised said Henderson that they would pay the same." This is a clear admission of the identity of the draft, and the defendants admitted that they sent the telegram. Henderson took this telegram and the draft in question and presented them to the bank, and the bank relying upon the telegram and the letter which they held paid to Henderson the amount of the draft. The promise of the defendants, contained in the telegram, was direct, absolute and unconditional. It was a contract which was sufficient in substance to hold the defendants liable as acceptors of the bill : Coffman v. Campbell, 87 Ill. 98 ; Central Savings Bank v. Richards, 109 Mass. 413. The requirements of the Act of 1881 were satisfied if the evidence of this contract was a writing signed by the party. The defendants wrote the telegram and deposited it with the telegraph company, from the

very nature of the transaction they made the telegraph company their agent for the purpose of transmitting the message to Henderson.  One who acts upon a promise contained in a message received through a telegraph company has to take the risk of the authenticity of the message.  When he proves that the person sought to be charged wrote and directed the message to be sent, he is in exactly the same position as if the person upon whose telegraphic promise he has acted had personally delivered to him the written instrument, the original message.  The writing, signed by these defendants which constituted an acceptance of this draft, is the original telegram, the production of which they waived, consenting that a copy should be offered in evidence: Whilden v. Merchants' & Planters' Nat. Bank, 64 Ala. 29; Brinkman v. Hunter, 73 Mo. 172; Molson's Bank v. Howard, 40 N. Y. Superior Ct. 15.  None of the specifications of error are well founded.

The judgment is affirmed.