## Vangel et al. v. Shuster

*Robert M. Bernstein,* for plaintiffs.
*Harold Scott Baile,* for defendant.

FLOOD, J., April 27, 1949.—Minor plaintiff, a 16-year-old pedestrian, was injured when she was struck

by defendant's automobile, following an intersection collision between the automobiles of defendant and additional defendant. There was a serious injury to plaintiff's thigh, and later thrombophlebitis developed, which plaintiff's doctors said resulted from the injury. The jury found a verdict of $10,000 for the minor and $5,000 for her parents against defendant, and a verdict for additional defendant. Original defendant asks a new trial.

1. The first objection is to the competency of Doctor Hardy's opinion to the effect that the thrombophlebitis resulted from the injury. Doctor Hardy treated the girl immediately following the injury and performed the skin graft operation. He testified that the saphenous vein was tied off and the femoral artery thereafter had to do the work of bringing back the fluid from the foot to the blood stream. He testified that the swelling which was apparent upon his examination just a few days before the trial indicated that the femoral vein was inflamed and that the blood was not coming back to it normally and that this condition of edema or thrombophlebitis resulted, in his opinion, from the accident. He was asked by defendant whether the statement on the hospital record showing rheumatic heart disease suffered by plaintiff in childhood would affect his opinion. The doctor said that it would not, that while a heart infection coming from arteriosclerosis or sub-acute bacterial endocarditis might cause thrombophlebitis, rheumatic heart disease did not cause this condition. He further stated that if there were such heart condition both legs would be affected whereas in this case only the injured leg was affected.

Upon cross-examination Doctor Hardy was asked whether he checked the hospital records on two subsequent occasions when plaintiff returned to the hospital but was not treated by him, and he said that he had not consulted them. He was asked about a state-

ment on one of these records to the effect that the etiology of the thrombophlebitis was undetermined. He said that did not change his opinion. Defendant concluded his cross-examination by asking the doctor whether in the opinion he had expressed he had taken into consideration the finding of other doctors in the hospital at the time of plaintiff's second admission. He answered: "Yes". He then was asked whether in the opinion that he expressed it was necessary for him to take into consideration the facts that were found by the other doctors on the later admissions. He answered: "Not necessarily, but I have taken them in, at your request". Defendant then moved to strike the testimony in that it was based on the opinion of other doctors not in evidence.

It seems obvious from the above recital that the motion to strike was properly denied. The doctor had first expressed his opinion without relying upon the facts or opinion contained in the hospital records on the second and third admissions. Defendant then cross-examined him as to whether some of those facts would change his opinion. He said that they would not. It seems clear to us that what he was saying was that he considered the facts and opinions in the other two hospital records at defendant's request, and after doing so his opinion remained the same as it had been before. Any consideration given by him to these facts was given only because defendant insisted that he consider them, and of course defendant cannot take advantage of such a situation.

2. Defendant also objected to Doctor Zibelman's opinion to the effect that injury caused the thrombophlebitis. Doctor Zibelman testified that plaintiff came to see him on December 10, 1947, about six weeks after the accident, and thereafter he saw her intermittently until October 15, 1948. At the time she first came to him she had a "report of her medical condition from

her injury from the University Hospital" but this report was not put in evidence at any time and defendant's counsel objected to any reference to it. In August 1948 Doctor Zibelman diagnosed the condition as thrombophlebitis and sent her to University Hospital but did not see her or treat her while she was at this hospital. On October 27, 1948, he sent her to Mount Sinai Hospital where apparently he saw her every day during her stay there. He said that plaintiff was still suffering from thrombophlebitis and would probably suffer from it for some years to come. He gave as his opinion, in answer to a hypothetical question, that the thrombophlebitis resulted from the injury. Defendant objected on the ground that the hypothetical question did not include the facts found as they appeared on the hospital records, but refused to suggest what should be added to the question on the ground that he could not add what was not on the record. The objection was overruled. Plaintiff's attorney in an effort to meet the objection said that there was a notation on the hospital record about plaintiff's having had rheumatic heart disease when she was a child, which is now inactive. Mr. Baile objected to the statement that the record said that the disease was inactive and asked for the withdrawal of a juror, which was refused.

It appears that this statement by plaintiff's counsel can hardly be objectionable since the whole matter of rheumatic heart disease was injected into the case by defendant's counsel on his cross-examination of Doctor Hardy and the record in this case does not show any existing rheumatic heart disease.

The real difficulty on this part of the case arises out of certain answers made by Doctor Zibelman upon cross-examination. He was asked by Mr. Baile whether in the opinion expressed by him he had taken into consideration any facts which were found by the doc-

tors at the University or Mount Sinai Hospitals. He answered: "Yes, I have, very definitely."

These hospital records were not in evidence. The doctor answered a hypothetical question in which nothing relating to these records was included. Defendant appeared to be no more anxious to put in these records than plaintiff was. His strategy apparently was to lie back, obtain an admission that the doctor based his opinion on something in these records, and then have his opinion stricken out as based upon facts not in evidence, under the ruling in Howarth et ux. v. Adams Express Co., 269 Pa. 280 (1921). If Doctor Zibelman had been in the courtroom during Doctor Hardy's testimony—and it is the trial judge's recollection that he was—he would have been justified in thinking that what defendant was driving at was whether his opinion would be changed by the notation on the hospital record as to the rheumatic heart condition. If so, it would seem clear that what he meant in the last quoted answer was that he had taken into consideration the notation with regard to rheumatic heart disease and that it had not affected his opinion. In fact the court can hardly believe that the emphatic nature of his answer can mean anything less than that he meant to say that the facts in the hospital record did not change the opinion that he expressed independently of the records.

There remains the fact that Doctor Zibelman did have, from his first contact with plaintiff, a "report of her medical condition from her injury at the University Hospital". The doctor said further that he was influenced by the diagnosis of the University Hospital, but from his examination and findings he "could not see how the girl did not injure her saphenous vein due to the depth of the wound and the evulsion of the skin involved", so he reformulated his opinion "that there is not any question in [his] mind that the injury caused

the thrombophlebitis of the right saphenous vein". When asked whether this was based on his own opinion or "any one else's opinion also", he said that "it was a joint opinion". Finally he said that in view of the history and the findings in his opinion there was nothing other than the injury which could have caused the thrombophlebitis, and in answer to another question said that the findings just referred to were his own findings made by himself and that the facts upon which he made his diagnosis were made in his own office at the time of his original diagnosis, but in part he took into consideration the facts referred to by the records of the University and Mount Sinai Hospitals, but not facts which he had learned from talking to other doctors who treated plaintiff.

We thus have a situation in which the doctor said that his opinion is his own but that he considered the hospital records which are not in evidence and the facts contained therein. We have also to consider that the opinion was given in answer to a hypothetical question which said nothing about the hospital records and was otherwise unexceptionable. Defendant objected to it only on the ground that it did not contain certain unspecified matters in the hospital records which were not in evidence. Following this, defendant, in a cross-examination which the record shows confused the witness, the court and counsel for plaintiff alike, endeavored to show that the doctor's opinion was based in part upon opinions of other doctors contained in the hospital records or perhaps facts contained in the hospital records and not discovered by the doctor himself. No indication was given as to what these facts might be.

As to the records of the University Hospital, at the time of plaintiff's first admission, we have the evidence of Doctor Hardy who testified earlier in the trial as to plaintiff's condition while in that

hospital and there was nothing in the testimony which differs from the facts in the hypothetical question or conflicts with the facts Doctor Zibelman found on examination of plaintiff. See Gyulai v. Prudential Insurance Company of America, 135 Pa. Superior Ct. 73, 76 (1939). A careful examination of all of Doctor Zibelman's testimony indicates that if the doctor used this report from the University Hospital it did no more than confirm his own diagnosis and that this is what he had in mind, when he said that his opinion was based in part on what the other doctors had found.

The Mount Sinai Hospital record was referred to by defendant in his cross-examination. Insofar as this reference goes it contradicted Doctor Zibelman since it said that the "etiology was undetermined". Obviously his opinion was not based upon this.

All in all the court would be most technical to upset the verdict merely because Doctor Zibelman said that he took into consideration the opinion of the other doctors, under this confusing examination. In view of this record it seems very likely that what he meant was that: (1) He considered the statement with regard to rheumatic heart disease which defendant's counsel referred to in his cross-examination of Doctor Hardy, and (2) that he considered the statement that the etiology was undetermined in the Mount Sinai Hospital and that these did not cause him to change his opinion, and (3) that he considered the opinions of other doctors confirming his own opinion, but that, in his own language, the opinion was nevertheless his own, even though, since the other doctors agreed with him, it was in a certain sense a joint opinion. He certainly could not have meant literally that it was a joint opinion since it was not made by him and other doctors together after consultation. It does not appear at all from the testimony that he considered any facts, as

distinguished from opinion, not of record, except the two just mentioned, both of which were introduced by defendant's counsel on his cross-examination. All of the evidence gives the impression that there were no additional facts, and the verdict should not be upset by speculating that there were such and they formed part of the basis of Doctor Zibelman's opinion.

Defendant himself by his method of cross-examination conjured up this difficulty and confusion, and should not be allowed to profit by it. In the opinion of the court en banc the various statements by the doctors do not bring the case within the rule of Pietro v. P. R. T. Co., 298 Pa. 423 (1930), or Howarth v. Adams Express Co., 269 Pa. 280 (1921). Even when Doctor Zibelman says he considered facts he learned from other doctors, it seems unlikely, in view of the context that he meant anything more than the facts on the hospital record which we have discussed above. The Supreme Court said in Pietro v. P. R. T. Co., supra, at page 429: "had the witness later stated that his opinion would have been the same, even with those extraneous facts eliminated, the giving weight to them in rendering the expressed opinion would have been cured." We must remember that it was a doctor talking, and not a lawyer making subtle distinctions between fact and opinion of the type "highly fit for cynical amusement, were not the names of Justice and Truth involved in their consideration". Cf. 7 Wigmore (3rd ed.) §§1919, 1974, 1975.

Doctor Zibelman's opinion did no more than corroborate that of Doctor Hardy, which as we have shown above, was clearly competent. If Doctor Zibelman's opinion were clearly incompetent, we would grant a new trial, because the subject matter was of great importance in the case. However, in view of our discussion above, we feel that the granting of a new trial would not be a proper exercise of our discretion.

3. Defendant further objects to the court's refusal to direct a verdict against additional defendant and the court's action in admitting evidence on behalf of additional defendant. Defendant's complaint against additional defendant sets forth that the latter was operating a motor vehicle westwardly on Osage Avenue so negligently that when it arrived at Forty-ninth Street it was caused to collide with the automobile of defendant, forcing the latter on to the pavement and causing it to strike minor plaintiff. No written appearance or answer was filed by additional defendant. At the trial additional defendant appeared in person unrepresented by counsel. Defendant offered in evidence her complaint against additional defendant and the court admitted it. After the conclusion of defendant's testimony the court asked additional defendant whether he wished to say anything. He thereupon took the stand, over defendant's objection, and testified as to his version of the accident. Neither party cross-examined him.

Defendant claims that the failure of additional defendant to file an appearance or answer brought into play Pa. R. C. P. 2255 (c) and constituted an admission of all the factual averments of liability in the complaint. We cannot follow this argument.

Pa. R. C. P. 2255 (c) provides that all allegations of fact in the complaint to which an answer is required and which are not sufficiently answered shall be conclusive upon additional defendant. Since this is a tort case no answer is required except to allegations of identity, ownership, agency or the like. Therefore, rule 2255 (c) gives no basis for defendant's claim that failure to file an answer is conclusive against additional defendant on the averments of liability.

Pa. R. C. P. 2255 (a) provides that the procedure including pleadings, between the party joining an additional defendant and additional defendant, shall be the

same as though the party joining additional defendant were a plaintiff and additional defendant were a defendant. Pa. R. C. P. 1047 provides that the prothonotary on præcipe. of plaintiff shall enter judgment against a defendant in a tort case who has filed no appearance or pleading to a properly endorsed complaint. However, in spite of the language of Pa. R. C. P. 2255(a) it is probably true that defendant may not obtain judgment for want of appearance and answer against additional defendant prior to trial or judgment against original defendant in favor of plaintiff. But that is no reason for holding that original defendant has a different remedy against additional defendant which the rules do not provide for. There is nothing in the rules that says that a failure to file an appearance or answer in a tort case constitutes an admission of all facts, and not merely those facts which are admitted by a defendant in a tort action by failure to file an answer.

We cannot read such a right in defendant into the rules when it is not spelled out. Judgment for want of an answer is always opened upon a showing that justice requires it: Fuel City Mfg. Co. v. Waynesburg Products Corp., 268 Pa. 441 (1920); Oppenheimer et al. v. Shapiro, 163 Pa. Superior Ct. 185 (1948). A "conclusive" admission of liability such as defendant asks for here is, in our opinion, more favorable to him. Cf. Gurdus to use of Solnicki v. Philadelphia National Bank, 273 Pa. 110, 114 (1922); Ravenswood Bank v. Reneker, 18 Pa. Superior Ct. 192, 196 (1901). Defendant is trying to read into the rule a remedy against additional defendant more conclusive and more effective than the remedy expressly given to plaintiff against original defendant. He is given no such right by Pa. R. C. P. 2255(a) or 2255(c).

The court was in error in admitting all the averments of defendant's complaint against additional

defendant in the first instance. Additional defendant, however, did not object to it and does not complain of it now. Defendant, however, complains that he should have been allowed to rely upon this and did rely upon it in his failure to cross-examine additional defendant. If he failed to cross-examine defendant by reason of his mistaken idea of law he is not entitled to a new trial for this reason. If he says that the court misled him by the earlier admission of the averments of the complaint, certainly the court corrected any such idea by the reversal of its stand in admitting the testimony of additional defendant.

4. Defendant also objects to the charge with regard to loss of earning power, and to the amount of the verdict. We do not see any error in the charge. The amount of the verdict for minor plaintiff is not in any way excessive if the medical testimony is to be believed. However, since the testimony was that the medical expenses were $596.45, we have an award of $4,403.55 to the parents for loss of earnings prior to the time when the minor will reach 21. This seems to us excessive and the verdict for the parents must be reduced to the sum of $3500.