A. JUDSON WELLS, Appellee, v. WESTERN UNION TELE-GRAPH· COMPANY and B. G. LYMAN, Appellants.

**Courts:** DISMISSAL OF ACTION IN FEDERAL COURT: SUBSEQUENT TRIAL IN STATE COURT: *Res judicata*: LAW OF THE CASE. · The dismissal without prejudice of an action in the federal court, after appeal and reversal of a judgment for plaintiff, is not an adjudication which bars a subsequent action in the state court for the same cause; and while the opinion of ·the federal court is the law of the case in future proceedings in that tribunal, it has no more

force in a subsequent trial in the state court than the opinions of any other court of foreign jurisdiction, to which the litigants were not parties.

**Assignment of cause of action to prevent removal to federal court.** An assignee of a claim against a foreign telegraph company, who has paid a valuable consideration therefor, may sue in the state courts; and the objection that the assignment was made to prevent a removal of the cause to the federal court does not obtain, although the objection would be valid if the assignment was without consideration.

**Telegraphs:** TRANSMISSION OF FICTITIOUS MESSAGE: DAMAGES: NOTICE OF CLAIM. The statute requiring notice prior to suit on a claim against a telegraph company, for the erroneous transmission or negligent delay in delivery of a message, does not apply to a claim for negligence in sending a false, fictitious and forged message, and in such case the notice need not be given.

**Same:** ELECTION OF REMEDIES: LACHES. An election of remedies occurs only where the plaintiff in fact has two or more remedies; a mere misconception of his right to sue, or to sue by a particular form of action, is not an election. So that where the sendee of a forged telegram, a bank, permitted suit for damages to be brought in the federal court in the name and for the benefit of another, and on appeal the judgment for plaintiff was reversed, the case remanded and then dismissed without prejudice, there was no election giving rise to an estoppel barring the right of the sendee, or its assignee, to sue in the state court: and as the action was at law and brought before it was barred by the general statute of limitations, the doctrine of laches does not apply.

**Same:** DAMAGES: LIABILITY OF TELEPHONE COMPANY. In this case a seller of cattle took the buyers check for the purchase price but refused to turn over the cattle without a guaranty of the check, and it was agreed that the buyer should have the bank upon which the check was drawn guarantee the same by telegram to the bank at which he desired credit. The buyer delivered a fictitious message to the agent of the telegraph company, who, knowing that it was not genuine, transmitted the same, and it was delivered to the bank and the proceeds paid to the creditor. The cattle were then delivered to the buyer, the check dishonored and the seller was insolvent. *Held,* that the bank accepting and paying the check had a right of action against the telegraph company for negligently transmitting the message.

**Same.** A telegraph company, whether considered in the light of an ordinary individual conveying written information, or as a car-

rier of information owing a duty to all applying to it for service, can not be a party to an actionable fraud by transmitting a fictitious message, without incurring liability to all parties interested in the transmission and delivery.

**Same:** DAMAGES. A telegraph company is not liable for special 7 damages resulting from the sending of a fictitious message, unless it knew, or had reason to believe from the message itself or from extraneous facts, something of its importance, and the likelihood that damages would result to someone from its breach of duty: but it is not necessary that the company know the details of the business to which the message relates, it is enough if the results likely to follow the breach may be gathered in a general way from the sending of the message; nor need the parties have contemplated the amount of actual damages which ought to be allowed.

**Banks and banking:** ACCEPTANCE OF CHECK: REVOCATION. A tele-8 gram, if authentic, sent from one bank to another stating that it would honor a personal check for a specific amount, constitutes an acceptance from which the honoring bank can not recede, and upon which any one dealing with the check may rely as a part of the transaction.

**Telegraphs:** FICTITIOUS MESSAGE: DAMAGES: EVIDENCE. It is not 9 necessary, in an action against a telegraph company for injury suffered by reason of the sending of a fictitious message honoring a check, for plaintiff to show that the exact damage should have been anticipated; nor is it necessary that the message should have been addressed to plaintiff directly; it is sufficient if he is one of those persons who had a right to rely thereon, and whom the company ought to have known it was injuring, or might injure, by sending the same.

**Same:** DIRECTION OF VERDICT: EVIDENCE. Where defendant, after the 10 overruling of his motion for a directed verdict, in open court concurs in the view of the court that there were no disputed facts and nothing for the jury to determine, he can not complain of a directed verdict for plaintiff; and the same is justified by the evidence in this case.

*Appeal from Webster District Court.*—HON. R. M. WRIGHT, Judge.

TUESDAY, NOVEMBER 23, 1909.

ACTION at law to recover damages of defendant tele-

graph company for negligently transmitting a forged telegram purporting to have been signed by the Bank of Denison and directed to the Commercial Bank of Britt, Iowa. There was a trial to a jury resulting in a directed verdict for the plaintiff, and defendants appeal. *Affirmed.*

*George H. Fearons, H. D. Estabrook* and *Wright, Call & Sargent,* for appellants.

*Kelleher & O'Connor* and *Senneff & Bliss,* for appellee.

DEEMER, J.—Plaintiff is a resident and citizen of New York, and defendants are the Western Union Telegraph Company and B. G. Lyman, its one time operator at the town of Denison, in this state. As assignee of Schriver Bros., a copartnership doing business in this state, and of the Commercial Bank of Britt, Iowa, each alleged to be the owner of a claim or cause of action against the telegraph company and its agent, Lyman, plaintiff, brought this action to recover damages for defendants' negligence in sending to the bank of Britt a forged and fictitious telegram reading as follows: "March 14, 1902. To Commercial Bank, Britt, Iowa. We will honor Barnes draft for eighty-nine hundred seventy-two dollars. [Signed] Bank of Denison." While several grounds of negligence are charged, they may all be epitomized for the purposes of this appeal, into one, and that is that Lyman, the telegraph operator, knew, or in the exercise of ordinary care and prudence, should have known that the message was false, fictitious, and forged, and that the sender thereof, one Barnes, had no authority to send it, and that he knew, or should have known, that the message was unauthorized by the Bank of Denison, and that it was sent with intent to defraud the addressee thereof or some person who would be justified in relying thereon. Defendants filed an answer

in which, among other things, is pleaded (1) a former adjudication; (2) that plaintiff's assignment is and was without consideration, colorable, and fictitious, and made with the sole purpose and intent of defeating a removal to the federal courts; (3) that plaintiff, as assignee of the Bank of Britt, could not recover because no notice was given to defendant as provided by sections 2163 and 2164 of the Code; and (4) that plaintiff, as assignee of Schriver Bros., can not recover, because his assignor being an undisclosed principal, could not have done so. The answer also denied any negligence on the part of the telegraph operator. The trial court sustained a demurrer to that part of defendants' answer pleading a former adjudication, and of this complaint is made. It is also contended that the trial court erred in directing a verdict for plaintiff for reasons which will appear during the further consideration of the case.

It appears from the undisputed testimony that the firm of Schriver Bros. sold a lot of cattle to one Barnes for $8,972, and took his check upon the Bank of Denison for the amount. They, however, refused to surrender the cattle without some guaranty that the check would be paid, and they then agreed that Barnes should have the Bank of Denison transmit such a guaranty by telegram. Schriver Bros. requested that the telegram be sent to the Bank of Britt. Barnes lived at Denison, and had been engaged in the live stock business for some time. He had transacted a great deal of business with the telegraph company through its agent, Lyman. After the agreement with Schriver Bros. with reference to the telegram, Barnes returned to Denison, and there, over the telephone, dictated to Lyman the dispatch heretofore set out. The agent testified that he knew this message, although signed in the name of the Bank of Denison, was being dictated by Barnes, the man who drew the draft or check to Schriver Bros.; testified that he knew it was Barnes who called

over the phone, and that, after giving the substance of the message, he, Barnes, said, "Sign it 'Bank of Denison.'" Lyman made no inquiry of the bank about the matter, but sent the message as it had been dictated. The charge for sending the message was not made to the bank, but, as we understand it, to Barnes. Indirectly, Lyman also testified that he knew that the telegram as sent had reference to Barnes' live stock business. The draft or check to which it referred had been left with the Commercial Bank of Britt by the Schrivers pursuant to an arrangement whereby credit was to be given to the Schriver Bros. upon receipt of the guaranty, and, although the cattle had been shipped, they were not to be released to Barnes until the receipt of such a message. The message was delivered to the Commercial Bank in due season and it directed the release of the cattle to Barnes, who immediately disposed of them. The Commercial Bank upon receipt of the spurious telegram gave Schriver Bros. credit for the amount of the check or draft upon its books, and forwarded said draft in due course for collection. When the draft reached Denison, the bank upon which it was drawn refused to accept or honor it, repudiated the telegram as false and spurious, and allowed the same to go to protest. When the draft was returned to the Bank of Britt, it demanded that Schriver Bros. make the same good, and thereupon they executed to the said bank their notes for the amount thereof. These notes are worthless, however, for the reason that Schriver Bros. are insolvent, and they were indorsed to plaintiff in this action, who now holds them as part of his claim under his assignments. It appears that Schriver Bros. brought suit against the Western Union Telegraph Co. alone in the federal court for the Northern District of Iowa, which suit went to trial and judgment in that court in favor of the said Schriver Bros. for the full amount claimed. Upon appeal to the United States Circuit Court of Appeals, the judgment was

reversed. See 129 Fed. 344 (64 C. C. A. 96). The reversal was for error in one of the instructions. Upon remand to the trial court it was again heard before Hon. Henry T. Reed and a jury, resulting in a verdict for plaintiff in the case for the same amount as before. Again an appeal was taken and again a reversal was had. See 141 Fed. 538 (72 C. C. A. 596, 4 L. R. A. (N. S.) 678). The reversal on the second appeal was largely upon the ground that, as Schriver Bros. were the undisclosed principals of the Bank of Britt, they could not recover. The case was thereupon remanded without any judgment having been entered to the federal trial court. When the case reached that court on the second remand, plaintiffs dismissed the same without prejudice, and thereafter they assigned their claim to plaintiff herein, who is a resident and citizen of the State of New York.

I. Defendant's plea of former adjudication is bottomed upon these proceedings in the federal courts. It is manifest from this statement that there never was any

1. COURTS: dismissal of action in federal court: subsequent trial in state court: *res judicata:* law of the case.

final judgment against Schriver Bros. in those courts. True, several opinions have been rendered therein which for the purpose of final trial at *nisi* would constitute the law of the case for those courts; but it is idle to say that there has, in fact, been a former judgment adjudicating the right of plaintiff's assignor to recover. It is said, however, that these opinions settled the law of the case, and are binding as such. This is true in part. They do settle the law of the case for all purposes of trial in the federal courts, the opinion on appeal being conclusive on the trial courts in further proceedings had therein; but, as no further proceedings were had, these decisions are of no more weight with us than if they had been rendered by any other court of a foreign jurisdiction in cases to which these litigants were not parties. There can not well be much doubt about this proposition on principle and the

authorities seem to point to but one conclusion. *Hooper v. Railroad,* 107 Tenn., 712 (65 S. W. 405); *Foley v. Cudahy Packing Co.,* 119 Iowa, 246; *Gardner v. Railroad,* 150 U. S. 349 (14 Sup. Ct. 140, 37 L. Ed. 1107); *Spring Valley Co. v. Patting,* 210 Ill. 342 (71 N. E. 371). The trial court correctly sustained the demurrer to that part of the answer pleading a final adjudication.

II. It is argued that the assignments to plaintiff were without consideration, colorable, and fictitious, and made for the sole purpose of preventing a removal of the suit, or suits, to the federal court. There is no testimony to support this claim. The evidence introduced by the defendant itself shows that plaintiff purchased the claims and took the assignments, and that he paid $3,000 therefor. There is nothing but the barest inference that this was done to prevent a removal to the federal courts. The case in this respect is ruled by *Vimont v. Railroad,* 64 Iowa, 513; id., 69 Iowa, 296; *Stryker v. Crane,* 123 U. S. 527 (8 Sup. Ct. 203, 31 L. Ed. 194); *Jahn v. Lumber Co.* (C. C.) 157 Fed. 407; *Everett v. Railway Co.,* 73 Iowa, 443; *Hawley v. Railway Co.,* 71 Iowa, 717. Of course, if the assignments were without consideration and merely colorable, as defendants contend, that would defeat the action, but the record does not support such a claim. As tending to support these views, see *Provident Savings v. Ford,* 114 U. S. 635 (5 Sup. Ct. 1104, 29 L. Ed. 261); *Oakley v. Goodnow,* 118 U. S. 43 (6 Sup. Ct. 944, 30 L. Ed. 61).

2. ASSIGNMENT OF CAUSE OF ACTION TO PREVENT REMOVAL TO FEDERAL COURT.

III. Again, it is said that, as assignee of the Bank of Britt, plaintiff has no right to maintain the action for the reason that neither he nor the bank served any notice of their claim for damages, as provided in sections 2163 and 2164 of the Code. These sections, so far as material, read as follows: Code, section 2163:

3. TELEGRAPHS: transmission of fictitious message: damages: notice of claim.

"The proprietor of a telegraph or telephone line is liable for all mistakes in transmitting or receiving messages made by any person in his employment, or for any unreasonable delay in their transmission or delivery, and for all damages resulting from failure to perform the foregoing or any other duty required by law, the provisions of any contract to the contrary notwithstanding." Code, section 2164, provides: "In any action against any telegraph or telephone company for damages caused by erroneous transmission of a message, or by unreasonable delay in delivery of a message, negligence . . . shall be presumed; . . . but no action for the recovery of such damages shall be maintained unless a claim therefor is presented in writing to such company," etc. We are constrained to hold that section 2164, which requires the notice, does not apply to a case of this kind. Here there was neither erroneous transmission nor unreasonable delay. The claim is for negligence in sending a false, fictitious and forged message. If appellant's contention in this respect be correct, then a presumption of negligence arose from a showing that the message was a forgery. This must follow if the statute be given the construction claimed for it. But appellant rightly insists that there is no presumption of negligence from the mere sending of a forged message. Hence no notice is required where such a message is negligently sent, and plaintiff, under the facts shown, may recover in the event it be found that the Bank of Britt might have done so in its own right.

IV. Again, it is argued that plaintiff, as assignor of the Bank of Britt, is not entitled to recover for the reason that, had the bank brought the suit, it should and would have been defeated because of an estoppel by reason of its conduct with reference to the former litigation, and by reason of an election on its part to allow the action to be brought in the name of and for the benefit of Schriver Bros. Had the case gone to judgment in the federal courts, there might be

4. SAME: election of remedies: laches.

ground for claiming that this judgment was binding upon the Bank of Britt, because of its conduct with reference to the litigation. But it never passed to judgment, and the most that can be said in this connection is that the Circuit Court of Appeals was of opinion that Schriver Bros. as the undisclosed principals of the Bank of Britt had no right to recover. Schriver Bros. dismissed that case, and presumptively paid all the costs of the litigation. Assuming that they had no right of action against the telegraph company and that the Bank of Britt was concluded by that holding, there was, in fact, no holding that the Bank of Britt might not have a right of recovery. Indeed, the opinion of the Circuit Court of Appeals, in effect, concludes that the Bank of Britt might have had a cause of action against the telegraph company in its own right. Under our cases, a misconception of plaintiff's right to sue or to sue by a particular form of action does not amount to an election of remedies. *Redhead v. Cattle Co.*, 126 Iowa, 410; *Lemon v. Bank*, 131 Iowa, 79. The doctrine of election applies only when a plaintiff in fact has two or more remedies. If it be determined that there is but one, his adoption of another is not held to be an election. (See cases just cited.) For the purposes of this discussion, it must be assumed that there is a liability to either Schriver Bros. or the Bank of Britt. If there be no liability to either, then the doctrine of election has no application to the case. If the liability is to the Bank of Britt, then it is not, for reasons already stated, estopped by judgment, for none was rendered, and there is no estoppel *in pais* because there is no testimony upon which to base such a finding. All that is shown in this connection is that its officers were witnesses at the trial in the federal court, who appeared and gave testimony pursuant to subpoenas duly served. From such facts an estoppel *in pais* does not arise. As the action was brought before it was barred by the general statute of

limitations, and is at law, the doctrine of laches does not apply. *Thomas v. Holmes,* 142 Iowa, 288.

V. If defendant telegraph company, through its agent, Lyman, was guilty of the negligence charged and found by the trial court to have been established, it was liable to someone for the damages sustained, and that one was either the Bank of Britt or Schriver Bros., and, as plaintiff represents and is the assignee of both, he is entitled to recover, unless it be for some technical reason already considered or hereafter referred to. The Circuit Court of Appeals seemed to believe that the liability was to the Bank of Britt, and not to Schriver Bros. We may easily conceive of a case where, if the rule announced by that court were to be followed, there would be no liability to any one. Suppose that, instead of passing the check through the Bank of Britt, Schriver Bros. had used some other channel whereby to collect the draft given it by Barnes, would there have been any right of action under the doctrine announced by the Circuit Court of Appeals, even had Schriver Bros. relied upon and used the forged message? From a reading of the opinion we are constrained to believe that the Circuit Court of Appeals to be consistent must have held that there would not have been any liability on the part of the telegraph company.

But, however this may be, it is shown that upon the strength of the telegram the Bank of Britt gave Schriver Bros. credit for the amount of the check or draft, sent it for collection to the Bank of Denison, and, when the instrument was protested, took Schriver Bros. note for the amount of the credit given them, which note was then and is now worthless. By this means the bank lost its hold upon the cattle, which it retained until the receipt of the telegram, and gave Schriver Bros. a credit to which they were not entitled, and which they, as we understand it, exhausted before it was learned that the message was a forgery. It seems to

5. SAME: damages: liability of telegraph company.

us that, conceding the negligence of defendant, the Bank of Britt had a clear right of action against the defendants. As sustaining this view, see *U. S. Tel. Co. v. Gildersleve,* 29 Md. 232 (96 Am. Dec. 519; *Lee v. Tel. Co.,* 51 Mo. App., 375).

Whether or not Schriver Bros. had a right of action is a much more troublesome question. The Circuit Court of Appeals held that they did not have, and there is *dicta* to the same effect in *Lee v. Telegraph Co., supra.* On the other hand, there is *dicta* to the effect that there is a right to recover under such circumstances in *W. U. Tel. Co. v. Mellon,* 96 Tenn., 66 (33 S. W., 725). And Judge Thompson, in his work on Electricity, states the rule as follows: Section 427: "The true view is the one which elevates the question above the plane of mere privity of contract, and places it where it belongs, upon the public duty which the telegraph company owes to any person beneficially interested in the message, whether the sender, or his principal where he is agent, or the receiver, or his principal where he is agent." Moreover, in *Harkness v. W. U. Tel. Co.,* 73 Iowa, 190, we said on this question:

It is objected that the court erred in rendering judgment for the plaintiff because the message was neither sent by nor to her, and no contract was made with her. The court was justified in finding that both Sloan and Walters were the agents and attorneys of the plaintiff, and that the telegram was sent by one of them and received by the other for the use and benefit of the plaintiff. Therefore she may well be said to be an undisclosed principal, and in such case we understand the rule to be that such principal, as the ultimate party in interest, is entitled against third persons to all advantages and benefits of such acts and contracts of his agent, and the principal may sue in his own name on the contract. Story, Agency, section 418; *Insurance Co. v. Allen,* 116 Mass. 398; *Gage v. Stimson,* 26 Minn. 64 (1 N. W. 806). The fact that the defendant had no knowledge that the plaintiff was in fact principal, and that the telegram was sent for her use and benefit, is im-

material, except that it may be true that the defendant may set up as a defense any matters that would constitute a defense if the suit was brought in the name of the agent, which occurred prior to the disclosure of the principal.

See, also, as bearing upon this proposition *May v. Telegraph Co.,* 112 Mass., 90; *Milliken v. W. U. Tel. Co.,* 110 N. Y. 403 (18 N. E. 251, 1 L. R. A. 281); *Leonard v. Tel. Co.,* 41 N. Y. 544 (1 Am. Rep. 446); *Cashion v. W. U. Tel. Co.,* 124 N. C. 459 (32 S. E. 746, 45 L. R. A. 160); *W. U. Tel. Co. v. Simpson,* 10 Kan. App. 473 (62 Pac. 901); *W. U. Tel. Co. v. Adams,* 75 Tex. 531 (12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep., 920).

On principle the case, in so far as it is bottomed upon liability to Schriver Bros. and to plaintiff as their assignee, assumes many different aspects. From one point of view the defendant telegraph company is to be treated as an ordinary individual conveying written information to another, the character of which information is known to it. In this aspect its rights and liabilities are perhaps contractual, although even in this relation it may be guilty of actionable negligence or misfeasance. In another light a telegraph company assumes the attitude of a common carrier of information, owing a duty to the public and to each and every one who may apply to it for service. No matter which of these prevails, it can not be a party to an actionable fraud without submitting itself to liability to the party injured. We have heretofore said that the relation which a telegraph company bears the public is akin to that of a common carrier, and, following this rule, have held that an addressee of a message, although having no direct contract relations with the company, may recover all damages sustained by him due to the erroneous transmission of or delay in sending a message. See *Herron v. Telegraph Co.,* 90 Iowa, 129; *Mentzer v. Telegraph Co.,* 93 Iowa, 752; *McPeck v. Tele-*

6. SAME.

*graph Co.,* 107 Iowa, 356; *Cowan v. Telegraph Co.,* 122 Iowa, 379. Indeed, section 2163 of the Code, which we have heretofore quoted, makes a telegraph company liable for all damages resulting from failure to perform any duty required by law relating to the transmission and receipt of messages. This is the view prevailing in other states. *Telegraph Co. v. Reynolds,* 77 Va. 173 (46 Am. Rep. 715); *Telegraph Co. v. Fenton,* 52 Ind. 1; *Telegraph Co. v. Mc-Kibben,* 114 Ind. 511 (14 N. E. 894); *Telegraph Co. v. Mellon,* 96 Tenn. 66 (33 S. W. 725).

The action in this case clearly sounds in tort growing out of a duty which the telegraph company owed, not only to the sender, but to the addressee of the message and to all persons interested in its correct transmission and delivery. If the action were based upon contract and could be brought by the sender alone as in England and in some of our commonwealths, it is manifest that neither the addressee nor his undisclosed principal might recover. We have passed that point, however, because of the practical concession of counsel that the addressee may recover the damages, if any sustained by him.

Assuming, then, that the addressee may recover because the action sounds in tort, may an undisclosed principal of this agent recover the damages if any sustained by him? For the solution of this question we must look to some well-settled rules applicable to somewhat analogous cases. It seems to be well settled that, if an agent makes a contract for the transportation of goods without disclosing the fact that he is acting merely as agent, his principal is entitled to sue the carrier for loss of or injury to the goods. *New Jersey Co. v. Bank,* 6 How. 344-379 (12 L. ed. 465); *Elkins v. Boston R. R.,* 19 N. H. 337 (51 Am. Dec. 184); *Hartford Co. v. Railway Co.,* 175 U. S. 91 (20 Sup. Ct. 33, 44 L. ed. 84); *Hall v. Railway Co.,* 13 Wall. 367 (20 L. ed. 594); *Green v. Clark,* 12 N. Y. 343.

But it is said that, even if the action be bottomed upon tort or neglect of duty, there can be no recovery because the damages suffered by Schriver Bros. could not

**7. SAME: damages.** reasonably have been apprehended. As a general rule, it is true, of course, that a telegraph company can not be held liable for special damages or perhaps for more than nominal damages, unless it knew or had reason to believe from the message itself, or from extraneous matters, something of its importance, and that damage was likely to result to some one from its breach of duty. *Evans v. Telegraph Co.,* 102 Iowa, 219. But it is not necessary that the company or its agent have knowledge of all the details of the business to which the message relates, nor of the particular business intended. It is enough if the results likely to follow may be gathered in a general way from the sending of the telegram. *Evans v. Telegraph Co., supra; Manville v. Telegraph Co.,* 37 Iowa, 214; *Garrett v. Telegraph Co.,* 83 Iowa, 257; *McPeck v. Telegraph Co., supra.* It is not essential either that the parties must have contemplated the amount of the actual damages which ought to be allowed. The liability of the company is for all direct damages which both parties would have contemplated as flowing from its breach, if at the time they entered into it they had bestowed proper attention upon the subject, and had been fully informed of the facts. *Leonard v. Telegraph Co.,* 41 N. Y. 544 (1 Am. Rep., 446); *Telegraph Co. v. Church,* 3 Neb. (Unof.) 22 (90 N. W. 878, 57 L. R. A. 905); *Telegraph Co. v. Edmondson,* 91 Tex. 206 (42 S. W. 549, note 66 Am. St. Rep., 873).

Now assuming, as we must, that defendant's agent knew the law, and taking it for granted that

**8. BANKS AND BANKING: acceptance of check: revocation.** he knew the contents of the message, and assuming, again, as we must from the testimony, that he knew Barnes was in the live stock business and buying and selling cattle, we find him

accepting the message from Barnes, which we have heretofore set out, knowing that it was not signed or authorized by the Bank of Denison, directed to the Bank of Britt, and relating to a draft or check drawn by Barnes upon the Bank of Denison. This message amounted in law to an acceptance of that draft, from which the Bank of Denison, if the message were authentic, could not recede. *Johnson v. Clark,* 39 N. Y. 216; *Garretson v. Bank* (C. C.) 47 Fed. 867; *Coolidge v. Payson,* 2 Wheat. 66 (4 L. Ed. 185); *Exchange Bank v. Rice,* 98 Mass. 288. Upon this acceptance any one dealing with Barnes' check or draft had a right to rely, and the Bank of Britt undoubtedly had authority, implied as of law, to use the telegram as constituting an acceptance and as part of the instrument itself. The agent must have known of this fact if he believed that Barnes' check or draft had been purchased or was to be cashed by the Bank of Britt. He must have known, also, for such is the law, that the bank, as agent of the holder, might receive the draft simply for collection, and might, after the receipt of the message conclude to do what the evidence shows it did in this case.

Moreover, there is nothing to show that the operator thought he was dealing with the Bank of Britt as a principal, and there is nothing on the face of the telegram to indicate that this was the fact. He did know that Barnes was buying cattle. He was informed by the message that Barnes had issued a check or draft to some one and for some purpose to the amount stated. In view of this knowledge, he should have assumed that Barnes was pursuing his ordinary business, and had issued his draft for the purchase price of cattle. He did not know, nor does the message disclose, the then ownership of the check or draft, although it was apparent to him that, whoever the owner, he had refused to accept it unless the bank on which it was drawn would honor it. It is true that the message was directed to the Bank of Britt, but,

as we have said, the agent must have known that it was not then the owner. The object of the telegram was to make the check good, no matter in whose hands it might then be, and there was nothing either in law or morals to prevent the bank's using the message after its receipt. Indeed, according to all known rules of business, it became a part of the transaction, and was likely to pass either to the then holder of the draft or to any person who might care to purchase the check or draft after the message was re-received; so that the agent had every reason to believe that this telegram was not a private or confidential one to the Bank of Britt, but was one relating to commercial paper which the Bank of Britt was authorized to use and present to any one interested, either as a holder or prospective purchaser of Barnes' draft. In view of the law on this subject, and the known customs and habits of business men, no other conclusion can, as it seems to us, be properly derived from the facts already recited. As sustaining these views, see *Exchange Bank v. Rice,* 98 Mass., 288; *Stemen v. Harrison,* 42 Pa., 49 (82 Am. Dec. 491); *Riley v. Bell,* 120 Iowa, 618.

It is not necessary in an action bottomed upon tort for plaintiff to show that the exact damage should have been foreseen and anticipated. *Cowan v. Telegraph Co.,* 122 Iowa, 379; *Burk v. Creamery Co.,* 126 Iowa, 730; *Brown v. Coal Co.,* 143 Iowa, 662.

9. TELEGRAPHS: fictitious message: damages: evidence.

The doctrine which we have announced regarding liability to one who is not party to the transaction is not a new one. It was announced in the old case of *Polhill v. Walter,* 3 Barn. & Adol. 114. In that case it was said: "It is true that the representation was made immediately to the plaintiff, and was intended by the defendant to induce the plaintiff to do the act which caused his damage. Here the representation is made to all to whom the bill may be offered in the course of circulation, and is, in fact,

intended to be made to all and the plaintiff is one of those; and the defendant must be taken to have intended that all such persons should give credit to the acceptance, and thereby act upon the faith of that representation, because that, in the ordinary course of business, is its natural and necessary result." Again, in *Swift v. Winterbottom,* L. R. 8 Q. B. Cases, 244, it is said: "It is now well established that, in order to enable a person injured by a false representation to sue for damages, it is not necessary that the representation should be made to the plaintiff directly. It is sufficient if the representation is made to a third person to be communicated to the plaintiff or to be communicated to a class of persons of whom the plaintiff is one, or even if it is made to the public generally, with a view to its being acted on, and the plaintiff as one of the public acts on it and suffers damage thereby. It is enough that one who makes complaint because of the false representation is one of those whom the person making the false representations ought to have been aware he was injuring or might injure by what he was doing." These principles are fundamental, and have been announced by this court. *Warfield v. Clark,* 118 Iowa, 69; *Hubbard v. Weare,* 79 Iowa, 678. See, also, *Culliford v. Gadd,* 139 N. Y. 618 (35 N. E. 205), from which we make the following quotation: "The evidence warranted the jury in concluding that this representation was made by the defendant. It is not a defense to show that the representations were not made to the plaintiff in person, but were made to her agent, so long as they induced the payment of the money. Fraud committed on the agent is fraud upon his principal. See *Raymond v. Howland,* 12 Wend. 176; *Allen v. Addington,* 7 Wend. 9. There is testimony in the case to satisfactorily support the finding by the jury that the principal was disclosed to the defendant and that he acted with full knowledge of the capacity in which the plaintiff's husband

was acting. If this were not so, the charge of the learned trial judge that 'it is immaterial whether or not the defendant knew that Culliford was acting as the agent for his wife' was not error, for the reason that the agent is not bound to disclose his principal, and his failure to do so does not waive any rights of his undisclosed principal as against the defendant."

That Barnes intended to deceive and defraud by sending this spurious message, and that it was immaterial to him as to whom this was, is conceded. Suppose now that Lyman, as the agent of a private person acting within the apparent scope of his authority, with knowledge of the spurious character of a writing similar to the message in suit, and knowing or having good reason to believe that a fraud was intended, should have delivered this writing to the holder of the check or draft or to one who purposed buying it or to an agent of the holder of the check or draft, would there be any doubt of. the liability of the principal for whom the agent acted in carrying the guaranty or letter of acceptance? It seems to us that, even should we eliminate the notion that defendant owed a, duty to the public and place the matter simply on the ground of private duty based upon contract, the result would be the same. Here defendant received what was the equivalent of a forged, spurious, and fictitious writing, knowing its character and having notice or knowledge of the maker's intent to defraud. This he undertakes to deliver to a certain person in order that it might be used and relied upon either by him or some one holding the unaccepted draft; he does deliver it to the person to whom it is addressed, who is acting for the holder of the draft, and the message is shown to the holder or is acted upon by the person to whom delivered. Would there be any doubt in such case of the right of the holder of the draft to act upon the writing carried by the private party and to recover the damages sustained by him? We think not.

See *Wilson v. Green,* 25 Vt. 450 (60 Am. Dec. 279);
*Bauman v. Bowles,* 51 Ill., 380. From the latter case we
quote as follows: "It is further urged, the evidence shows
no participation on the part of Ellsworth, either in the
sale or fraud. The sufficient answer is, that he signed
these false certificates as secretary, and by such means lent
himself to the perpetration of the fraud. His signature
shows that he cooperated with Bauman in making and
issuing these fraudulent certificates, and he must be held
responsible to persons injured by his wrongful act. In
actions of this character it is not necessary to show any
privity of contract between the plaintiff and Ellsworth. It
is sufficient if the latter has been guilty of fraudulent rep-
resentations made to enable Bauman to deceive the pub-
lic, and Bauman has thereby been assisted in defrauding
the plaintiff. 1 Hilliard on Torts, 8, note; *Weatherford v.
Fishback,* 3 Scam. (Ill.), 174; *Gerhard v. Bates,* 20 Eng.
Law & Equity, 129; *Langridge v. Levy,* 2 M. & W. 519."
See, also, *Perkins v. Evans,* 61 Iowa, 35. This same doc-
trine was applied to telegraph companies in *May v. Tel.
Co.,* 112 Mass. 90.

VI. Lastly it is argued that the trial court was in
error in directing the verdict for the reason that the ques-
tion of defendant's negligence is ordinarily for a jury.
That this is the rule, is, of course, con-
ceded and it would be applicable and con-
trolling here but for the fact that the
record shows an agreement by defendant's
counsel that the court should decide the matter as a mixed
question of law and fact. At the conclusion of the testi-
mony, defendants filed a motion for a directed verdict upon
each count of the petition. This motion was overruled,
and thereupon plaintiff filed a motion for a verdict in his
favor for the full amount claimed. Either just before or
just after the filing of this motion the following colloquy
occurred between the court and counsel: "The Court:

10. SAME: direc-
tion of ver-
dict: evi-
dence.

Now, under the view of the court in this case, there are no disputed facts in the case and nothing for the jury to determine, but I would like to have the views of counsel in that regard. Mr. Call (one of the counsel for the defendants in open court): I will say that the counsel for the defendants concur in that view." This, it seems to us, fully justified the court in determining both the law and the facts of the case. At least defendants are in no position to complain. *Wagner v. Cawker,* 112 Wis. 532 (88 N. W. 599); *First Nat. Bank v. Crabtree,* 86 Iowa, 731, *Bennett v. Carey,* 72 Iowa, 476; *Harding v. Kohl,* (Iowa) 108 N. W. 233; *Read v. Insurance Co.,* 103 Iowa, 307; *McDermott v. Mahoney,* 139 Iowa, 292. There is no claim that the testimony does not justify a finding of negligence, and we are not prepared to say that it does not justify a finding of knowledge on the part of the agent that fraud was intended by Barnes, and that he so far participated therein as to knowingly send a false and spurious message. It is not necessary, however, to make a definite holding on this last proposition. On account of the holding of the Circuit Court of Appeals when one branch of the case was before it, which expresses views contrary to those entertained by us, we have given the case a great deal of attention, and are of opinion that no such errors appear as would justify a reversal.

The judgment must therefore be, and it is, *affirmed.*