CITIZENS NATIONAL BANK OF DES MOINES, IOWA, Appellant, v. THE WESTERN UNION TELEGRAPH COMPANY, `Appellee.

**Negligence:** TELEGRAMS: FRAUDULENT MESSAGE: AGENCY: EVIDENCE.
1  A telegraph company is not a guarantor of the genuineness of a message, yet it may be liable to one injured by a forged message if it receives the same under circumstances which excite, or reasonably ought to excite, suspicion of its fraudulent character and forwards it without warning the addressee; and this is especially true where the message indicates upon its face that the addressee may suffer pecuniary loss if he acts upon its genuineness. The evidence in this action for transmitting a forged telegraphic order or draft, purporting to have been sent by a bank is held to sustain a finding that the messenger who called at the bank for the message was the agent of the defendant, and also sufficient to require submission of the question of defendant's negligence in receiving and transmitting the message.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. The evidence in this action
2  is also held insufficient to show that plaintiff was guilty of contributory negligence as a matter of law in paying the draft without identification, or without investigation, as to its genuineness.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

SATURDAY, JANUARY 25, 1913.

ACTION at law to recover damages. There was a directed verdict for the defendant, and plaintiff appeals. The material facts are stated in the opinion.—*Reversed.*

*Clark & Hutchinson,* for appellant.

*Miller & Wallingford,* for appellee.

WEAVER, J.—The plaintiff is engaged in the banking business at Des Moines, Iowa, and the United States National Bank.is engaged in like business at Omaha, Neb. On April 24, 1909, the defendant telegraph company delivered to the plaintiff bank a message, purporting to have been sent by the Omaha bank, in the following words: ''Omaha, Nebr., Apr. 24, Citizens' Natl. Bank, Des Moines, Ia. Pay Clarence A. King five hundred dollars identification waived. United States Natl. Bank.'' Soon thereafter the said payee, Clarence A. King, or some person assuming that name, appeared at the plaintiff bank, which, acting upon the faith of the telegram, paid to him the said sum of $500. Upon said telegraphic order or draft being presented or reported to the Omaha bank, it was pronounced a forgery and payment refused. Meanwhile King disappeared, and recourse upon him is unavailing. Recovery of damages is sought in this action on the theory and allegation that the telegraph company was negligent in receiving and forwarding said message without exercising due care to know that the same was sent or authorized by the Omaha bank, the name of which was subscribed thereto. The defendant denies the charge of negligence on its part. Trial was had to a jury, and at the close of the testimony the court, on motion of defendant, directed a verdict in its favor. The grounds stated in this ruling were, first, that there was no evidence of negligence on the part of the defendant, but

that plaintiff itself was negligent in making the payment. From the judgment entered upon the directed verdict, plaintiff appeals.

There was evidence tending to show that on the morning of the day in question the operator in one of defendant's Omaha offices received a telephone communication asking that a messenger be sent to the United States National Bank to receive a telegram for transmission over the company's wires. Acting in accordance with the custom of the office, the operator sent a messenger, one Earl Height, a boy of seventeen years, to receive and bring the telegram. Height went to the bank, and entering the lobby or hall from which the banking room opened he there encountered a man, who accosted him, asking, "Are you the boy answering the call?" and the reply being in the affirmative he handed the young man a written message, saying, "Here is the telegram." At the same time he paid the young man the transmission charge of twenty-five cents, together with a small tip. Supposing the person whom he met to be an officer or clerk of the bank, and believing the message to be the one for which he had been sent, the messenger received it and returning delivered it to the defendant's operator, who at once sent it to Des Moines. On its receipt at the latter place, it was promptly delivered to the plaintiff at its place of business. The man King, who appeared and received the money, was a stranger to the cashier, who saw nothing in his appearance to arouse suspicion, and no identification of him was demanded or required.

While other questions have been argued, the principal inquiry presented upon this appeal is whether the facts to which we have adverted, with the attendant circumstances, make a case for the jury upon the plaintiff's allegation of negligence. It is true, of course, that a telegraph company is not held to guarantee the genuineness or good faith of a message which it transmits; but if it receives a forged message

1. NEGLIGENCE: telegrams: fraudulent message: agency: evidence.

under circumstances which excites, or reasonably ought to excite, suspicion of its true character and forwards it without warning to the addressee, who relies upon it to his injury, a liability is there incurred. *Wells v. Telegraph Co.*, 144 Iowa, 619. This is especially true where the message is such as indicates upon its face the reasonable certainty that he to whom it is sent will suffer pecuniary damage if he acts upon faith of its genuineness.

Does the record here disclose any circumstances from which the jury would properly find the defendant negligent in this respect? The answer to this inquiry must turn to a great extent upon the relation in which the young man Height stood to the defendant company. Was he the agent of the company in receiving the message? That the jury would be justified in so finding we have no doubt. That he was sent by the defendant's operator to receive the message is admitted. That he was so sent in pursuance of defendant's customary method of business is not disputed. True the operator, as a witness, speaks of him as employed by the ''A. D. T. Co.,'' but he performed this service at the special instance of the defendant and for its accommodation. He himself testifies that he was ''messenger boy for the Western Union Telegraph Company,'' and had been in its service for a considerable period. It is too clear to require argument that a finding that Height was the agent of the company in this transaction could not be set aside as being without support in the evidence.

This being determined, we think it must follow that the issue of negligence should have been submitted to the jury. Height was an experienced messenger. He had frequently been sent to this bank on similar errands. On all prior occasions he had appeared at the proper desk in the banking office, and there received the messages to be sent out. He further says that on all other occasions the telegrams delivered to him by the bank were written upon numbered blanks, but the message delivered to him on this occasion outside of the banking office was written upon an ordinary desk

blank bearing no number. The man who delivered this message to him was an entire stranger. It was handed to Height, not in the banking office, but in the lobby or hall outside of the office. The circumstances were so unusual, so out of the ordinary course of business, that, to say the least, it is a fair question, to be determined from all the evidence, whether he was not negligent in receiving the telegram and putting it in the course of transmission. In delivering it to the defendant's operator, he did not disclose the circumstances under which it was received, and the operator made no inquiry or investigation with reference to the message when it was brought to him. Again, the operator who received the telephone message purporting to come from the United States National Bank, or from some one presumptively at least at that bank, did not, so far as the testimony shows, in any manner attempt to identify the proposed sender by voice or otherwise; and assuming, as we must, that he supposed it came from the bank, because the telegram when it came to him purported to have been signed by the bank or its officials, the jury might have found that in the exercise of ordinary care the operator himself should and would have known that it was spurious, because it did not bear any number, either consecutive or otherwise. As already stated, the bank, for reasons of its own, and doubtless as a means of protection, numbered all the messages for which it was responsible. The operator who received the message for transmission is presumed to have had knowledge of this custom on the part of the bank, and was charged with the same notice as the messenger of the fact that the message was not consecutively numbered. Furthermore, the signature to the message was a forgery. There is no testimony that the operator used any care to determine its genuineness. These matters, to say nothing of others to which counsel have given some attention, present a fair issue of fact to be determined from the evidence; and the court erred in withdrawing it from the jury's consideration.

Nor can we say, as a matter of law, that the plaintiff was guilty of contributory negligence in paying the money to King without identification, and without waiting to make

2. SAME: con-
tributory neg-
ligence: evi-
dence.

inquiry of the Omaha bank. In view of the fact that a new trial must be ordered, we refrain from further discussion of the testi-mony. It is enough now to say that for the reasons already stated the judgment is reversed, and the cause remanded for further proceedings in harmony with this opinion.—*Reversed.*