PEARLSTONE v. WESTERN UNION TELEGRAPH CO. (No. 764.)

(Court of Civil Appeals of Texas. El Paso. Dec. 13, 1917.)

1. APPEAL AND ERROR ⬭725(2) — ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment that the trial court erred in its findings of fact presents nothing for review, where the case was dismissed upon demurrer.

2. APPEAL AND ERROR ⬭719(4)—NECESSITY OF ASSIGNMENTS—FUNDAMENTAL ERROR.

Sustaining a demurrer to a petition presents fundamental error authorizing review, without assignment of error, where the judgment recites the ruling, the exception thereto, and notice of appeal.

3. TELEGRAPHS AND TELEPHONES ⬭56(2)—PERSONS ENTITLED TO DAMAGES.

A telegraph company is liable for erroneously duplicating a message to plaintiff sender's agent, although there is no direct contractual relationship between the sender and the company as to the unauthorized message delivered.

4. TELEGRAPHS AND TELEPHONES ⬭56(2)—LIABILITY.

Defendant telegraph company which erroneously duplicated plaintiff's message to his brokers, causing them to use his standing deposit in closing his account, etc., cannot avoid liability upon ground that it is responsible only to the brokers.

5. TELEGRAPHS AND TELEPHONES ⬭65(2)—MESSAGES—PETITION.

Allegations that defendant telegraph company erroneously duplicated a message to plaintiff's brokers, causing them to close his account, and that plaintiff when notified of such action could not countermand it because of deranged wire service, etc., do not affirmatively show that plaintiff ratified the brokers' action or failed to minimize his losses.

Appeal from Leon County Court; C. D. Craig, Judge.

Action by Barney Pearlstone against the Western Union Telegraph Company. From a judgment of dismissal, plaintiff appeals. Reversed and remanded.

Atkinson, Graham & Atkinson, of Houston, and Wm. Watson and L. T. Dashiell, both of Centerville, for appellant. Flippen, Gresham & Freeman, N. L. Lindsley and Dave W. Hardy, all of Dallas, for appellee.

HARPER, C. J. Appellant instituted this suit against the Western Union Telegraph Company to recover damages for delivering an unauthorized telegram to the firm of Wilkins & Fenner, cotton commission merchants of New Orleans, La., and appealed from a

judgment dismissing the cause to the Court of Civil Appeals, First District, and by order of Supreme Court, transferred here.

The only question presented for review is, Did the trial court err in sustaining the exceptions to the petition and, upon failure to amend, entering its judgment dismissing the cause? The petition contains the following allegations:

"That on September 29, 1915, plaintiff delivered to defendant for transmission and delivery the following telegram: '39 Daru 16 Coll. Sept. 29, 1915. Wilkins & Fenner, New Orleans, Twelve Eighty five sell two dec. buy one dec. on market buy one dec. twenty. Barney Pearlstone 944.' Which said telegram was delivered by the defendant to said Wilkins & Fenner in the city of New Orleans, at 9:44 a. m., on the 28th day of September, A. D. 1915, and instructed them to buy 100 bales of cotton for December delivery at market price and 100 bales of cotton for December delivery at 12.20 cents per pound, for plaintiff. That immediately upon receiving the above message, Charles E. Fenner, a member of the firm of Wilkins & Fenner, proceeded to execute said order by buying 100 bales of cotton at 12.35 cents per pound, and by 9:45 a. m., in confirmation thereof sent the following telegram by the Western Union Telegraph Company to said Barney Pearlstone: 'B. Pearlstone, Sept. 29, 1915. Buffalo, Tex. Bot one Dec. 35. W. & F.' And in further execution of said original telegram Chas. E. Fenner as a member of said firm of Wilkins & Fenner purchased 100 bales of cotton for December delivery at 12.20 cents per pound, and in confirmation of said purchase sent the following telegram to said Barney Pearlstone at 10:24 a. m.: 'B. Pearlstone, Sept. 29, 1915. Buffalo, Tex. Bot One Dec. Twenty. W. & F.' That at 11:40 a. m., Chas. A. Fenner, as a member of the firm of Wilkins & Fenner, received the following telegram by the Western Union Telegraph Company: '71 FX MQ 16 Collect. Buffalo, Tex. Sept. 29, 1915. Wilkins & Fenner, New Orleans, La. Twelve eighty five sell two decembers by one december on market buy one december twenty. Barney Pearlstone, 11:40 a. m.' That said firm of Wilkins & Fenner were struck by the similarity of the message received at 11:40 a. m., and that received at 9:44 a. m., which had already been executed and confirmed as above stated, the only difference being that in the message received at 11:40 a. m., the word 'December' or 'Decembers' was set forth in full, and in the message received at 9:44 a. m., the abbreviation 'Dec.' and 'Decs.' was used. That Chas. E. Fenner who received the telegram called this to the attention of said W. A. Wilkins. That said Chas. E. Fenner then proceeded to the execution of or following out the instructions received in said message received at 11:40 a. m., and purchased 100 bales of cotton for December delivery at 12.40 cents per pound. That said W. A. Wilkins in confirmation of said purchase and as a member of said firm of Wilkins & Fenner then filed with the Western Union Telegraph Company the following telegram at 11:46 a. m.: 'Barney Pearlstone, September 29th, 1915. Buffalo, Tex. Bot one Dec. 40. W. & F.' And at the time, to wit, 11:46 a. m., when said W. A. Wilkins placed the above telegram with said Western Union Telegraph Company for transmission to said Barney Pearlstone, plaintiff, he inquired whether or not in their opinion the said telegram received at 11:40 a. m., was by any possibility a duplicate of the said telegram received at 9:44 a. m. That thereupon the said Western Union Telegraph Company through its officials stated to said W. A. Wilkins, as a member of the firm of Wilkins & Fenner, as aforesaid, that in so far as they were able to tell said telegram received

at 11:40 a. m., was not a duplicate of said telegram received at 9:44 a. m., firstly, because that neither of said telegrams bore the word 'Duplicate,' and, secondly, for the reason that the telegram received at 9:44 a. m., came 'via Dallas,' whereas the telegram received at 11:40 a. m., came 'via New York,' which facts are indicated by the letters '39 Daru' on the message received at 11:40 a. m. That said Wilkins then and there requested the said Western Union Telegraph Company to use its service immediately to ascertain whether by any possibility the said second telegram received at 11:40 a. m., was a duplicate of the message received at 9:44 a. m., and that said Western Union Telegraph Company has not up to this day replied. That said Chas. E. Fenner at 1:05 p. m., on September 29, 1915, in further execution of said order, received at 11:40 a. m., bought, as a member of the firm of Wilkins & Fenner, 100 bales of cotton for December delivery at 12.20 cents per pound, and in confirmation thereof at 1:06 p. m., he filed with the Western Union Telegraph Company the following telegram: 'B. Pearlstone, Buffalo, Tex. Bot one dec. 20. W. & F.' That after the execution of these orders and the buying of said cotton for account of said Barney Pearlstone, plaintiff, all telegraphic service out of the city of New Orleans was seriously affected by the storm which was then raging, and it became impossible to send any further message over said lines. and that the price of cotton of the New Orleans Cotton Exchange rapidly declined, and at 1:30 p. m., cotton for December delivery was selling at 11.82 cents per pound. That on September 25, 1915, said Wilkins & Fenner had, on instructions received from plaintiff, purchased for his account, the following: 200 B/C December delivery at 11.85¢ per pound. And on September 29th, as above set forth, had purchased for his account: 100 B/C December delivery, at 12.35¢ per pound. 100 B/C December delivery, 12.20¢ per pound. 100 B/C December delivery, 12.40¢ per pound. 100 B/C December delivery, 12.20¢ per pound. And that they then held to his credit the sum of $1,082.10. That when the price of cotton for December delivery declined to 11.82¢ per pound, the contract loss on said 600 bales, based on the then existing quotations, amounted to about $1,000, including commissions as against a credit as above set forth of $1,082.10. That the said firm of Wilkins & Fenner not being able to communicate by telegram with plaintiff, Barney Pearlstone, in order to request from him a remittance to protect themselves against a further possible decline in the price of cotton for December delivery, they availed themselves of their privilege reserved under contract with said Barney Pearlstone, and sold 600 B/C, December delivery as offsets against the contracts carried for his account, said sales and offsets being made as follows: As an offset against the purchase of 100 B/C December delivery at 11.82¢ per lb. 9/25/15, sold 100 B/C December delivery at 11.84¢ per lb. As an offset against the purchase of 100 B/C December delivery at 12.35 of 9/29/15, sold 100 B/C December delivery at 11.84 per lb. As an offset against the purchase of 100 B/C December delivery at 12.20 of 9/29/15, sold 100 B/C December delivery at 11.84¢ per lb. As an offset against the purchase of 100 B/C December delivery at 12.40 of 9/29/15, sold 100 B/C December delivery at 11.80 per lb. As an offset against the purchase of 100 B/C December delivery at 12.20 of 9/29/15. Plaintiff says that the loss sustained by him because of the purchase by the said Wilkins & Fenner of 100 B/C December delivery at 12.40¢ per pound, and 100 B/C December delivery at 12.20¢ per pound, on instructions contained in the telegram received by the said Wilkins & Fenner at 11:40 a. m., on September 29, 1915, and the subsequent sale by them as an offset of 100

B/C December delivery at 11.84¢ per pound, and 100 B/C December delivery at 11.80¢ per pound, as above set forth, that the said Barney Pearlstone, plaintiff, suffered a loss of $511.19, including commission and revenue stamps. That if the telegram of September 29th, delivered to said Wilkins & Fenner at 11:40 a. m., on said date had not been so delivered, and consequently the said 200 bales of cotton had not been purchased at 12.40 cents per pound and at 12.20 cents per pound, respectively, the said plaintiff would have had a contract loss of only about $500 (as against a credit of $1,082.10) at the time that December delivery declined at 11.82 cents per pound on September 29, 1915, and that they, the said Wilkins & Fenner, would not then have desired to request a further remittance from the said Barney Pearlstone, and they would not have been compelled to sell for their protection 600 B/C December delivery as above set forth.

"(4) That the 200 bales of cotton plaintiff directed the said Wilkins & Fenner were purchased for him by said Wilkins & Fenner for delivery. That all orders for the purchase or sales of cotton for future delivery were received by said Wilkins & Fenner and executed with the distinct understanding that actual delivery was intended and that the party giving the order so agreed and intended, and obligated himself to make actual delivery.

"(5) And plaintiff agreed and contracted with the said Wilkins & Fenner that all orders which they received for future delivery were accepted by them with the understanding that they may close the transaction without notice when margins deposited were nearly exhausted, the settling of contracts to be in accordance with customs and rules of the New Orleans Cotton Exchange. And acting under said contract the said Wilkins & Fenner were authorized and empowered under their contract with plaintiff to close said transaction, which they accordingly proceeded to execute. That within a few days after the said Wilkins & Fenner closed their said contracts with plaintiff by selling his cotton at reduced prices in order to protect themselves, cotton rapidly advanced in price, and by reason of plaintiff's margin having been reduced and nearly exhausted on account of the losses sustained by him on the 200 bales purchased by the said Wilkins & Fenner, for him, under the above-described telegram, delivered at 11:40 a. m., on the said 29th day of September, 1915, plaintiff has been damaged in the sum of $485. Because he says that at the time that Wilkins & Fenner closed out said contract they had in their possession funds belonging to plaintiff in the sum of $570.91, which was more than sufficient to protect them from any loss that might have been sustained by them until such time as the prices of cotton actually did advance, and the said Wilkins & Fenner would have carried plaintiff's 400 bales of cotton which he had on hand until the market advances to a sufficient price to protect and prevent defendant from any loss by reason of his said actual purchases.

"Wherefore plaintiff prays that defendant be cited to answer this petition, that he have judgment for his damage in the sum of $1,000, for his costs, and for such other and further relief as in law or in equity he may be entitled."

To this petition defendant answered by general demurrer and many special exceptions.

[1, 2] The first assignment of error urged here is that the trial court erred in his finding of fact. There was no occasion for findings of fact and conclusions of law, for the case was not heard but dismissed upon demurrer. In such cases, the allegations in the petition are taken to be true; whilst the as-

signment presents no question for us to answer, we think the sustaining of the demurrer presents fundamental error where the judgment recites the ruling, the exception thereto, and the notice of appeal as in this case (Harbinson v. Cottle County, 147 S. W. 719), and the other assignments do not attack all of the exceptions to the petition, and for this reason appellee insists that the judgment should be affirmed. The answer is, if the petition states a cause of action appellant is entitled to have a trial of his case upon its merits, and this we are authorized to determine without assignments of error.

[3] Appellee by exceptions attacked the sufficiency of the allegations of plaintiff's petition to be or constitute the basis for a cause of action: (1) Because there is no allegation of facts constituting a contract between plaintiff and defendant for the transmission of the message delivered at 11:40, September 29th, because the sender of the original message would not be liable to pay the losses of the sendee occasioned by the negligent delivery of a duplicate without his authority; that if he has any cause of action, it is against Wilkins & Fenner who without authority from him, closed out his holdings.

There is no question under the law and facts of this case that the sendees, Wilkins & Fenner, in case of personal loss had a cause of action against the appellee by reason of its negligence in sending the unauthorized duplicate message because of the purchases made at a loss induced by the message, but appellee says that, because of the fact that plaintiff did not authorize the duplicate message, there was no contractual relationship between it and the now plaintiff, and therefore was no obligation to pay the losses sustained in the purchase and sale. To this we cannot give our assent, for the reason that the telegram fully discloses the relationship of principal and agent existing between the parties.

The rule in such cases is well established that it is not a question of mere privity of contract, but the telegraph company owes a public duty to any person beneficially interested in the message, whether the sender or his principal where he is agent, or the receiver or his principal where he is agent. Thompson's Electricity, § 427; Wells v. Western Union Tel. Co., 144 Iowa, 605, 123 N. W. 371, 24 L. R. A. (N. S.) 1045, 138 Am. St. Rep. 317, and Postal Tel. Co. v. Levy, 102 S. W. 134. The liability extends to all persons suffering injury by the erroneous transmission of a telegram, whether there is direct contractual relationship with the company or not, even though they be undisclosed.

[4] Appellee urges the further proposition that plaintiff was not bound to pay the losses for an unauthorized purchase of cotton by his broker; this is a good proposition of law as between the parties, but here the facts alleged are that Pearlstone had a standing con-

tract with Wilkins & Fenner as stockbrokers to use a deposit on hand with them for protection against loss, and to sell for protection, etc., and that by reason of this erroneous message for which the telegraph company was negligently responsible, the brokers made purchases and sales. The sales were authorized without the first or second message, at a loss, and to cover the loss they expended the plaintiff's money on deposit with them, but for the erroneous message would not have been done. The sales and the use of the money by the agents were therefore the same, in effect, as if plaintiff himself had done those things. The telegraph company, being the efficient moving cause of plaintiff's losses, cannot be heard to now say that it is only responsible to the agents.

[5] The further proposition is that because the petition shows that reply messages came from Wilkins & Fenner the same day notifying plaintiff of the purchases, and that he did not immediately repudiate, he thereby ratified the purchases. The petition contains the allegation that the wires were so deranged as that he could not so communicate with them. The fact, as urged by appellee, that the messages were received that day from New Orleans is not conclusive that a message could have been sent there from the point of their receipt; this is a question to be determined by the trial court or a jury.

It is true that appellant was required to minimize his losses by all reasonble means, but the petition does not affirmatively show that he has not done so.

For the reasons assigned, the trial court erred in sustaining the demurrers to the petition. The cause is therefore reversed and remanded for trial upon its merits.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.